

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 5:06-CR-067-C(01) |
| | § | |
| | § | |
| JOSHUA HEATH ZUNIGA | § | |

### MOTION FOR NON-GUIDELINE SENTENCE OR IN THE ALTERNATIVE FOR DOWNWARD DEPARTURE

TO THE HONORABLE JUDGE OF SAID COURT:

### INTRODUCTION

Defendant, JOSHUA HEATH ZUNIGA, urges the Court to assess a sentence less than the guidelines might suggest or in the alternative, to depart downward from the suggested guideline range.

### I.

### PRINCIPLES OF SENTENCING POST-BOOKER

In *Booker*, the Supreme Court held that *Blakely v. Washington* applied to the federal sentencing guidelines, and that the Sixth Amendment's jury trial guarantee prevented judges from finding facts that exposed a defendant to increased prison time. As a remedy, a different majority of the Court excised the provision of the Sentencing Reform Act that made the guidelines mandatory, 18 U.S.C.§ 3553(b). The remedial majority held that district courts must still consider the guideline range, 18 U.S.C. § 3553(a)(4) & (5), but must also consider the other directives set forth in § 3553(a). Thus, under *Booker*, courts must treat the guidelines as just one of a number of sentencing factors. Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

Section 3553(a)(2) states that such purposes are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider, *inter alia,* (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (3) the kinds of sentences available.

The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, "only depart ... in unusual cases for clearly identified and persuasive reasons." *United States v. Wilson*, 350 F.Supp.2d 910, 912, 2005 WL 78552, at *1 (D.Utah 2005). The approach espoused in *Wilson* is inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3553(a) factors, many of which, the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H.14, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The

guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range....

In sum in every case, courts must now consider *all* of the § 3553(a) factors, not just the guidelines. And where the guidelines conflict with other factors set forth in § 3553(a), courts will have to resolve the conflicts. . .courts must in all cases seriously consider the guidelines. The Commission has collected a great deal of data over the years and studied sentencing practices. Thus, courts not imposing sentences within the advisory guideline range should provide an explanation for their decision. But in so doing courts should not follow the old "departure" methodology. The guidelines are not binding, and courts need not justify a sentence outside of them by citing factors that take the case outside the "heartland." Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors.

## II.

## APPLICATION OF THE PRINCIPLES

A.  The Nature of the Offense

The Defendant was twenty-three (23) years of age when the FBI agents executed a search warrant at his parent's residence in Frisco, Texas. The Defendant cooperated fully with law enforcement and confessed to the agents. A thorough investigation performed by the Government revealed that Ms. McDonald was the only person with whom Mr. Zuniga had acted

inappropriately. Since his arrest approximately eighteen months ago, Josh has abided by all the terms and conditions of his release. The Defendant faces a maximum punishment of up to ten years incarceration. His guideline range is one hundred sixty eight (168) to two hundred ten (210) months incarceration.

B.   The History and Character of the Defendant

Aside from the instant offense, Josh has lived an exemplary life. Until his arrest in this case, he had never had any contact with the Criminal Justice System. Throughout his life, Josh has strived to positively impact those around him.

He excelled in sports at a very young age. He achieved tremendous success in a variety of sports including baseball, soccer, basketball, track and field, and football. He won numerous gold medals and other honors for his performance in sports related activities.

In school, he was active in speech and debate and has won many public speaking honors. Through the years, he has given the invocation at many of his graduation ceremonies. Recently, he was asked to give the ring ceremony speech at the University of Houston for his senior class. He won oratory awards in school and advanced to State level on numerous occasions.

Josh achieved extraordinary success in dance. Since the age of eleven, he traveled and competed throughout the world and the United States. He competed in the categories of Country-Western, Swing, Hustle, Theater Arts and Ballroom. He achieved the highest level in Country-Western, reaching Master Level in 1998. Additionally, he has taught all levels of dance for eight years. He is a three time World Champion and a 162 time event champion in various styles of dance. He has received accolades from mayors, governors, and several presidents.

Josh has been extraordinarily philanthropic, dancing for numerous charities countless

times over the years. He has been featured by the media in numerous mainstream periodicals for the recognition that he was given by local charities who appreciated his talents and effort.

Academically, Josh has always excelled as well. He graduated in the top 5% of his high school class and graduated from University of Houston with honors. He attended law school at South Texas College of Law during the fall semester of 2005. His desire to pursue his Masters has been placed on hold as a result of the instant case. He was accepted at SMU and Dallas Baptist University for their Masters programs.

Josh was selected to participate in the 2002 Olympic torch relay when it came through Texas. He proudly served as a torch bearer after being selected from thousands of applicants. He was selected based on an essay that was written about him highlighting his community service and positive impact on people in the community.

Josh comes from a very close knit family. After his father Mingo suffered a heart attack a few years ago, Josh has done all that he could to make life as comfortable for Mingo as possible. Josh also has done a great deal for his neighbors. He constantly looks for ways to help the community and does what he can to support efforts.

Josh purchased a business in September 2006 with a close family friend. The friend, who has tremendous faith and admiration for Josh both personally and professionally, financed the purchase by loaning Josh $135,000. Josh and his mother Cathy have been working extraordinary hours in order to ensure the success of the business.

C.   The Needs of the Public.

We don't believe that the public would benefit from Josh receiving a lengthy prison sentence. Josh's actions in the instant case represent aberrant behavior in that nothing in his past

remotely mirrors the actions for which he's pled guilty. We submit that Josh will never re-offend. The goals of Section 3553(a)(2) - to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, would also be accomplished if Josh was given the opportunity to continue his studies while serving a probationary sentence.

## DOWNWARD DEPARTURE

In the alternative, or in combination with the preceding request for a "non-guideline" sentence, defendant moves for downward departure for the following reasons.

1. For the reasons stated above, the facts of this case as they pertain to Josh Zuniga's conduct are outside the heartland of factors considered by the Sentencing Commission, see Koon v. United States, 518 U.S. 81 (1996).

Respectfully submitted,

**LAW OFFICES OF MARK EIGLARSH**
**404 WASHINGTON AVENUE**
**SUITE 750**
**MIAMI BEACH, FLORIDA 33139**
(305) 674-0003

BY: _____
DANIEL W. HURLEY for MARK EIGLARSH
Florida Bar No.: 956414

**HURLEY & GUINN**
**1805 13TH STREET**
**LUBBOCK, TEXAS 79401**
(806) 771-0700
(806) 763-8199 FAX

BY: _____
DANIEL W. HURLEY

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April 2007, a true and correct copy of the above and foregoing instrument was hand-delivered to Mr. Steve Sucsy, Assistant U.S. Attorney, 1205 Texas Avenue, Room 700, Lubbock, TX 79401 and to Wayne McKim, U.S. Probation Officer, 1205 Texas Avenue, Room 106, Lubbock, TX 79401.

*/s/ Daniel W. Hurley*
DANIEL W. HURLEY

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Steve Sucsy, the Assistant U.S. Attorney assigned to this matter, regarding the filing of the foregoing and he does oppose the granting of this Motion.

*/s/ Daniel W. Hurley*
DANIEL W. HURLEY for MARK EIGLARSH
Attorney for Defendant